UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMESHA G.[1],<br><br>  Plaintiff<br><br>  v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>  Defendant. | Case No. 5:19-cv-00949-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

In October 2015, Plaintiff, then a minor, filed an application for Supplemental Security Income ("SSI"). [AR 257-63.] Plaintiff alleged she became disabled in 1996, and was found disabled as a child. Upon attaining the age of eighteen, the Social Security Administration ("SSA") was required to make a redetermination of Plaintiff's status applying the adult disability standards. [AR 102-05, 125-27.] On March 20, 2018, Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ"), who later found her not disabled. [AR 12-57.]

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

The Appeals Council denied review on March 22, 2019. [AR 1-3.]

Plaintiff timely filed the present action seeking review in the District Court. The parties filed consents to proceed before the undersigned United States Magistrate Judge briefs addressing the single issue presented. [Dkts. 16 (Pl.'s Brf.), 19 (Df.'s Brf.) and 20 (Pl.'s Reply).] The matter is now ready for decision. For the reasons discussed below, the Court finds that this matter should be affirmed.

## II.   ADMINISTRATIVE DECISION UNDER REVIEW

The ALJ issued an unfavorable decision on April 27, 2018. The ALJ correctly stated that individuals who are eligible for SSI benefits as children must have their disability redetermined under the rules for disability used for adults when they attain the age of majority. [AR 15.] The medical improvement review standard does not apply in such situations. [AR 16.] The ALJ thus applied the five-step sequential evaluation process used for adults who file new applications for SSI. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ noted that Plaintiff had been found disabled as a child. Thus, she had not engaged in substantial gainful activity since her alleged onset date [AR 17]. At step two, the ALJ determined that Plaintiff suffered from the severe impairments of asthma, allergies, migraines versus tension headache, anemia, failure to thrive, leukopenia, and mood disorder due to general medical condition. [AR 17, citing 20 C.F.R. 416.920(c)).] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings") [AR 16]. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b) except as follows:

> She can occasionally lift 10 pounds and rarely lift 20 pounds, but is precluded from frequent lifting; she can stand and walk for four hours in an eight hour workday; she can sit for four hours in an eight hour

workday; she can rarely climb ladders and stairs; she can frequently twist, and could occasionally perform all other postural activities; she must avoid exposure to all environmental irritants; she must work in a climate controlled environment; she cannot climb ropes or scaffolds; she can concentrate for up to two hour periods of time, but would be limited to unskilled tasks with only occasional interaction with the general public; she is precluded from fast-paced production or assembly line-type work; and she is precluded from jobs requiring hypervigilance or intense concentration on a particular task, meaning she is precluded from work where the claimant could not be off task for even the shortest amount of time, like watching a surveillance monitor or where the claimant would be responsible for the safety of others.

[AR 18.]

Plaintiff raises a single issue in her challenge to the ALJ's findings and determination of non-disability: whether the ALJ erred in accepting the testimony of the Vocational Expert ("VE"), where Plaintiff contends that the expert's testimony was "in plain contradiction" to the Dictionary of Occupational Titles and the alleged conflict between the DOT job requirements and Plaintiff's RFC was insufficiently explained. [Pl.'s Brf. at 2.] Plaintiff requests reversal and remand for further administrative proceedings or for payment of benefits. [Pl.'s Brf. at 17-18 (only requesting remand); Pl.'s Reply at 3-4 (alternatively requesting payment of benefits).] The Commissioner asserts that the ALJ's decision should be affirmed. [Df.'s Brf. at 7.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. Vocational Expert's Testimony

Plaintiff contends the ALJ erred by relying on the testimony of the vocational expert ("VE") that Plaintiff could perform the representative jobs of bench assembler, an unskilled job at an SVP of 2, sticker, an unskilled job with an SVP of 1, and buckle-wire inserter, another unskilled job with an SVP of 1. The vocational expert testified that there were significant jobs within the national economy considering these positions (a conclusion that the parties do not challenge). [AR 52-53.]

The vocational expert's testimony was based on four hypothetical questions presented by the ALJ, only two of which are relevant here, where the second hypothetical builds on the first:

> **ALJ**: I would like you to consider a younger individual with a high school education and no past relevant work. . . . The first [hypothetical] has to do with there are no exertional limitations, but the individual should avoid concentrated exposure to fumes, odors, gases, or other pulmonary irritants as well as extreme temperatures; no

> working outside; no climbing ladders, ropes, or scaffolds.
>
> The individual can concentrate for up to two-hour periods of time, but would be limited to unskilled tasks with only occasional interaction with the public; no fast-paced or production or assembly line type work. When I said no outside work, what I really mean is there would have to be a climate-controlled environment. No jobs requiring hypervigilance or intense concentration on a particular task.
>
> And what I mean by this limitation is if I could preclude work where the work is such that the person couldn't be off task for even the shortest amount of time, something like watching a surveillance monitor or aware of the safety of the – this individual would be responsible for the safety of others. So those would not be appropriate work environments. Given these limitations, would this individual be able to do any work that exists in the national economy. And if so, can you give me three examples?
>
> **VE**: Yes. There would be some jobs. [Light exertional jobs such as electronics worker; small products assembler; and hand packager.]
>
> **ALJ**: All right. Let me give you a second hypothetical and this adding onto the first. And I'm going to give you some exertional limitations as well. The individual can occasionally lift 10 pounds, rarely lift 20 pounds, no frequent lifting. The standing and walking is four out of eight, the sitting is six out of – four out of eight.
>
> The individual would require – they could rarely climb ladders and stairs; occasionally all other postural; frequently twist; avoid all exposure to all environmental irritants. Given these limitations, would this individual be able to perform the jobs that you identified in hypothetical number one?

[AR 50-52.]

Given the above modified hypothetical, the VE responded that three previously identified positions would not be available, but that the three sedentary, unskilled positions identified above – bench assembler, sticker, and buckle-wire inserter – would be appropriate. [AR 52.] With respect to the bench assembler position, the VE testified that "it's an occupation I've evaluated over the years and it is a position where an individual could sit or stand to perform those tasks involved." [AR 53.] With respect to all three positions, the VE noted that "it is . . . outside the *DOT*, the sitting and standing for four in eight for each could be accommodated in those positions just based on my experience over the years." [AR 53.]

Finally, the ALJ specifically inquired as to whether the VE's testimony was otherwise consistent with the DOT:

**ALJ**: Is your testimony consistent with the Dictionary of Occupational Titles except where you've already noted that it's different based on your opinion?

**VE:** I believe it's consistent other than what I've addressed.

[AR 54.]

To ascertain the requirements of occupations as generally performed in the national economy, the ALJ may rely on VE testimony or information from the DOT. *Pinto v. Massarani*, 249 F.3d 840, 845-46 (9th Cir. 2001). Should an "apparent or obvious" conflict arise between a VE's testimony regarding the claimant's ability to perform a certain job and the DOT's description of that job, "the ALJ must ask the [VE] to reconcile the conflict" and must determine whether the VE's explanation is reasonable before relying on the VE's testimony. *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016); *see Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007) (explaining that neither the DOT nor VE evidence "automatically trumps when there is a conflict" and that if the ALJ determines that a conflict exists, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT].").

Plaintiff argues that the occupations identified by the VE have requirements that are inconsistent with Plaintiff's RFC and that the ALJ failed to address these alleged conflicts between the VE's testimony and the DOT requirements. Specifically, Plaintiff contends that VE's testimony conflicts with the following RFC limitations: (1) to four hours of sitting/four hours of standing/walking; (2) no frequent lifting; and (3) no fast-paced production work.

As explained further herein, the Court finds that there is no apparent or obvious conflict between the VE's testimony and the DOT's job requirements requiring any further resolution by the ALJ.

First, with respect to the sit/stand requirement of Plaintiff's RFC, the vocational expert noted that the RFC's four/four requirement was inconsistent with

1 sedentary jobs, which, as Plaintiff notes, generally require only two hours of
2 standing or walking in an eight hour day. [AR 53 (VE's testimony); Pl. Brf. at 7
3 (citing 20 C.F.R. 416.967(a)).] The VE testified that based on his experience, which
4 involved evaluation of the jobs he had identified over a period of years, the RFC
5 requirement of four hours of standing/walking could be accommodated. A
6 vocational expert's "recognized expertise provides the necessary foundation for his
7 or her testimony. Thus, no additional foundation is necessary." *Bayliss v. Barnhart*,
8 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ was thus entitled to rely on the VE's
9 testimonial evidence, and Plaintiff presents no evidence, only argument, to the
10 contrary. Plaintiff's sit/stand argument thus fails.

11 Plaintiff's second argument – that the identified jobs must, based on common
12 sense, require frequent lifting – requires too many assumptions and mental gyrations
13 to hold water. The VE testified that there were no conflicts other than those he
14 identified between Plaintiff's RFC and the job requirements as described in the
15 DOT, and specifically that the identified jobs did not require frequent lifting. [AR
16 52.] Plaintiff thus attempts to manufacture a conflict by arguing that the regulations
17 are vague as to whether frequent lifting of "negligible amounts" (as opposed to the
18 ten or twenty pound limitations specifically included in her RFC) is consistent with
19 Plaintiff's "no frequent lifting" limitation. [Pl. Brf. at 10-11.][2] The definition of
20 "negligible" is "so small or unimportant as to be not worth considering" or
21 "insignificant." [LEXICO Powered by Oxford US Dictionary located at

---

[2] Plaintiff concludes that frequent lifting of negligible amounts is required to perform the jobs identified by the VE. She bases this conclusion on her contention that frequent "reaching, handling, and fingering" – which the jobs require and her RFC permits – by necessity also requires lifting negligible amounts. [Pl. Brf. at 11-12.] She makes similar arguments about the dexterity required to perform the identified jobs. [*Id*. at 12-13.] But as the Commissioner correctly notes, "lifting" is a distinct limitation (*i.e.*, a different vocational requirement) than reaching, fingering, handling, or dexterity. [Df.'s Opp. at 4.]

7

http://www/lexico.com/ev/definition/negligible.] Plaintiff cites no evidence or caselaw to support her argument that "*lifting* negligible amounts" is ever a consideration in a disability determination and the Court cannot locate any such support either. Common sense dictates that it is not – it is so "unimportant as to be not worth considering." Moreover, it is clear that the ALJ was referencing the usual exertional limitation standards when she specifically mentioned the frequency with which Plaintiff could lift ten or twenty pounds – "occasionally" and "rarely," not "frequently." And again, the VE testified that the identified jobs did not require frequent lifting. [AR 55.] While perhaps creative, Plaintiff's frequent lifting argument is without merit.

Plaintiff's third and final argument relates to her RFC limitation to jobs not requiring fast-paced production or assembly line work. On direct examination, the VE testified that there was no conflict between Plaintiff's restriction from performing fast-paced work and the requirements of the identified jobs. On cross examination, Plaintiff's counsel elicited testimony from the VE that all employers would require *some* metric – some amount of required production – by which to measure performance. Counsel asked about the existence of jobs where the employee "[w]ould not be expected to meet any sort of production quotas or benchmarks, would be able to just work at whatever pace that person had to work at that day and sometimes it would be a pace that was slower than your average employee." [AR 56.] The VE responded that, "none of these jobs that I've outlined or any other jobs that I'm familiar with would be amenable, or an employer would be amenable to, a no quota or no standard of employment." [*Id*.] From this testimony, Plaintiff argues that there is a conflict because the ALJ did not properly define "fast-paced," which rendered "the residual functional capacity assessment and questioning of the vocational expert vague." [Pl. Brf. at 15.] Plaintiff's argument is nonsensical. That jobs that require *no* standard of productivity do not exist does not somehow render a limitation to "no fast-paced" assembly line jobs

vague. The VE testified clearly that the identified jobs did not require fast-paced work and the ALJ was entitled to rely on this testimony.

Plaintiff has not identified an "apparent or obvious" conflict between the VE's testimony regarding the claimant's ability to perform the jobs identified by the VE and the DOT's description of those jobs. Accordingly, remand is not warranted here.

## V.  CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: April 20, 2020

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE